# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
## 3:10cv140

| | |
|---|---|
| JOHN MILLAGE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| Vs. ) | MEMORANDUM DECISION |
| ) | AND ORDER |
| B.V. HEDRICK GRAVEL AND ) | |
| SAND COMPANY EMPLOYEE BENEFIT ) | |
| PLAN, and PRIMARY PHYSICIANCARE, ) | |
| INC., ) | |
| Defendants. ) | |
| _____ ) | |

**THIS MATTER** is before the court on the parties' cross motions for summary judgment (docs. 23, 37). For the following reasons, both parties' motions are granted in part and denied in part.

## I. Background

This action is brought pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., based on alleged wrongful denial of benefits.

### A. Plaintiff's Accident and Subsequent Denial of Benefits

On September 14, 2009, Plaintiff, a self-employed truck driver, was in a single-vehicle accident. Plaintiff sustained injuries, including a broken arm. Due to complications with his medical care, Plaintiff incurred over $100,000 in medical bills. As a beneficiary of his wife's health insurance policy with her employer, B.V. Hedrick Gravel & Sand

1

("Hedrick"), Plaintiff submitted his medical bills to Hedrick through Defendant Primary PhysicianCare, Inc. (hereinafter "PPC"). Plaintiff's claims were ultimately denied.

Plaintiff filed this action on March 24, 2010. In his amended complaint, filed April 22, 2010, Plaintiff brings two claims: (1) a claim for wrongful denial of benefits under 29 U.S.C. § 1132(a)(1)(B) (Count I); and (2) a claim for breach of fiduciary duty under 29 U.S.C. § 1109(a) and § 1132(a)(3) (Count II). Plaintiff seeks attorney's fees under 29 U.S.C. § 1132(g). Both parties have filed motions for summary judgment.

**B.     The Plan**

Since January 1, 1983, Hedrick has maintained a medical benefit plan known as the "B.V. Hedrick Gravel & Sand Company Employee Benefit Plan" ("the Plan") to provide medical benefits to employees of Hedrick and affiliated companies and their eligible, participating family members. The Plan is funded by Hedrick and contributions from employees and has stop-loss insurance to reimburse the Plan for losses over certain limits. The Plan designates Defendant PPC as the Plan Supervisor and Defendant Hedrick as the Plan Sponsor and Plan Administrator. It is undisputed that ERISA governs the Plan.

**1. Defendants Hedrick's and PPC's Respective Roles under the Plan**

The Plan grants full discretionary authority to Defendant Hedrick as Plan Administrator. The Plan states as follows:

> The Plan Administrator is required to administer this Plan in accordance with its terms and has the authority to establish policies and procedures for the management and operation of the Plan. It is the express intent of this Plan that the Plan Administrator shall have sole and complete discretionary authority to construe and interpret the terms and provisions of the Plan, to decide issues

2

regarding eligibility and benefits due under the Plan, and to make all determinations, including factual determinations, arising under the Plan. Except as otherwise required by law, the decisions of the Plan Administrator will be final and binding for all interested parties.

Joanne Johnson Aff., Ex. A, p. 67, doc. 24.

The Plan expressly states that PPC, as Plan Supervisor, does not have discretionary authority under the Plan:

> The Plan Administrator has complete power and discretionary authority to manage and administer the Plan. The Plan Administrator may delegate any assigned administrative duties to one or more designated person or entities. Processing of initial claims has been delegated to the Plan Supervisor; however, the duties of the Plan Supervisor are merely ministerial in nature and no discretionary authority or responsibility for the Plan has been conferred or delegated to the Plan Supervisor.

Joanne Johnson Aff., Ex. A, p. 3, doc. 24.

Since 1999, PPC has been responsible for claims processing, pursuant to a Managed Care Services Agreement ("the Agreement") between PPC and Hedrick. Joanne Johnson Aff., Ex. B. The Agreement reiterates that Hedrick is "the final arbiter as to the interpretations of the Plan and as to the payment of any benefits thereunder." *Id*. § 1, ¶ 1.3. The Agreement further states that PPC "is not and shall not be deemed to be a fiduciary of the Plan," and that "the duties of the Plan Supervisor hereunder are ministerial in nature; and this Agreement shall not be deemed to confer or delegate any discretionary authority or discretionary responsibility in the administration of the Plan." *Id*. § 2, ¶ 2.1.

2. **The Claims Process Under the Plan**

Under the Plan, PPC handles the initial claims decision. If PPC denies the claim

3

initially, a claimant may then appeal the decision to Hedrick, which then makes the final decision on appeal. Under the Plan, there is only one level of appeal.

### C. The Plan Language At Issue

The Plan Document and Summary Plan Description provides as follows:

> When injury or illness cause you or your dependents, while covered under this Plan, to incur Covered Medical Expenses, the Plan will determine benefits according to the provisions described in this Summary Plan Description and Master Plan Document.

Joanne Johnson Aff., Ex. A, p. 7, doc. 24. Here, Plaintiff contends that he incurred over $100,000 in medical costs due to his injury, including expenses for hospital room and board, nursing care, physical therapy, physician care, prescription drugs, surgical procedures, and x-rays. The parties agree that coverage applies to Plaintiff's medical costs unless a valid exclusion applies. Plaintiff's claims were denied based on an Exclusion in the Plan, referred to hereinafter as Exclusion #50, which states as follows:

> No benefits shall be payable under the plan for any charges resulting from:
>
> 50. Charges resulting from illness or injury covered by the Worker's Compensation Act or similar law; and charges resulting from an accidental injury or illness arising out of or in the course of employment for wages or profit (past or present).

*Id*. p. 24. It is undisputed that Plaintiff's medical costs result from an accidental injury or illness arising out of or in the course of employment for wages or profit, and it is further undisputed that Plaintiff is not covered by worker's compensation or any similar law. Plaintiff contends that the language of Exclusion #50 means that coverage is excluded if a plaintiff was already covered under worker's compensation *and* if the plaintiff's injuries

4

arose out of the course of employment for wages or profit. According to Plaintiff, since he was not covered by worker's compensation, Exclusion #50 does not bar coverage, and his claim was therefore wrongfully denied.

In response and in support of its own motion for summary judgment, Defendant Hedrick contends that the language of Exclusion #50 means that coverage is excluded if a plaintiff was already covered under worker's compensation *or* if the plaintiff's injuries arose out of the course of employment for wages or profit. According to Defendant, because Plaintiff's injuries arose out of the course of employment for wages or profit he is excluded from coverage.

## II. Standard Applicable to Motions for Summary Judgment

Here, the parties have submitted cross motions for summary judgment, wherein each side contends that there are no issues for trial and that judgment may be rendered as a matter of law. Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Zahodnick v. Int'l Bus. Machs. Corp.*, 135 F.3d 911, 913 (4th Cir. 1997). The party seeking summary judgment bears the burden of initially coming forward and demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a fact finder to

5

return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 817 (4th Cir. 1995). Thus, the moving party can bear his burden either by presenting affirmative evidence or by demonstrating that the non-moving party's evidence is insufficient to establish his claim. *Celotex Corp.*, 477 U.S. at 331 (Brennan, J., dissenting). When making the summary judgment determination, the court must view the evidence, and all justifiable inferences from the evidence, in the light most favorable to the non-moving party. *Zahodnick*, 135 F.3d at 913; *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997).

**III.    Discussion**

**A.    Whether *De Novo* Review or Abuse of Discretion Applies**

Here, the court must first determine whether the decision to deny coverage should be reviewed under a *de novo* or an abuse of discretion standard. As the court noted, *supra*, the Plan provides the following procedure for submitting claims: Claims are initially handled by PPC and inquiries regarding claims may be directed to it. Formal appeals are to be directed to Hedrick, which makes a final determination on appeal. Under the Plan, there is only one level of appeal, and after the initial appeal Hedrick's decision is final.

Here, however, because of apparent confusion in the claims procedure by PPC, or Hedrick, or both, the following happened: PPC initially denied the claim and instructed Plaintiff that he could appeal to the Plan Sponsor, Hedrick. The address given for the appeal, however, was PPC's address. Plaintiff sent his appeal to the address given by PPC. PPC denied the claim on appeal rather than sending the appeal to Hedrick for decision. PPC then

informed Plaintiff that he could appeal *once again* to Hedrick. At that point, Plaintiff filed this lawsuit. Hedrick states that it did not learn, until after Plaintiff filed this lawsuit, that Plaintiff had appealed the initial denial of his claims to PPC and that PPC had again denied the claim on appeal.

On May 3, 2010, after Plaintiff filed his amended complaint, Hedrick's Joanne Johnson sent Plaintiff's counsel a letter stating that Hedrick was denying Plaintiff's appeal.[1] The letter states:

> This letter is . . . in response to the appeal by your client, John Millage, from the denial of benefits under the Plan. . . . While Hedrick was generally aware that Mr. Millage had made a claim, it did not know about your January 6, 2010, letter or your January 19, 2010, appeal letter to [PPC], or PPC's response on February 3, 2010, until this suit, when it received claim file correspondence from PPC. Hedrick has now reviewed your arguments as to how exclusion 50 of the plan should be read.
>
> . . . .
>
> . . . [Exclusion 50] of the Plan sets out two related, but separate exclusions. Charges that are covered by the Worker's Compensation Act are excluded. Also, "charges resulting from an accidental injury or illness arising out of or in the course of employment for wages or profit (past or present)" are excluded. Mr. Millage was self-employed. As your January 19 letter says, he "was operating the truck pursuant to this employment" when he was injured. Thus Hedrick must deny Mr. Millage's appeal.

Letter from Joanne Johnson to Andrew J. Schwaba (May 3, 2010), doc. 24, Ex. 8.

Plaintiff contends that the proper level of review is *de novo*. According to Plaintiff,

---

[1] Plaintiff has presented detailed evidence on summary judgment regarding PPC's initial handling of Plaintiff's claim for benefits in an effort to show that Plaintiff's claim was wrongfully denied. I agree with Defendants, however, that PPC's handling of Plaintiff's initial claim is irrelevant to the claim for wrongful denial since Hedrick made the ultimate decision denying the claim.

7

Defendant Hedrick delegated the authority to determine Plaintiff's appeal to PPC and Defendant Hedrick therefore has no claim to a review of its decision under an abuse of discretion standard. Plaintiff contends, alternatively, that even if the court applies an abuse of discretion standard, the proper interpretation of Exclusion #50 compels summary judgment for Plaintiff.

In response, Defendant Hedrick contends that the court should review the decision for an abuse of discretion. Defendant Hedrick contends that it never delegated to PPC the authority to decide the claims decision on appeal, and that PPC's purported decision was simply the result of a procedural mistake. Here, it is clear that the Plan's procedures for the claim and appeal process were not followed. Nevertheless, Hedrick did ultimately make a final decision as to Plaintiff's claim. The Plan clearly gives Hedrick full discretionary authority to make claims determinations. Thus, the court will apply the abuse of discretion standard in reviewing the denial of Plaintiff's claim.

**B. Abuse of Discretion Standard of Review in ERISA Cases, and the *Booth* Factors**

In interpreting ERISA plans, courts look to the federal common law of contracts. If a contract is unambiguous on the dispositive issue, a court may properly interpret the contract as a matter of law and grant summary judgment because no interpretive facts are in issue. *Bailey v. Blue Cross & Blue Shield of Va.*, 67 F.3d 53, 58 (4th Cir. 1995). Furthermore, in reviewing under an abuse of discretion standard, a decision regarding benefits cannot be set aside as long as it was a reasonable exercise of discretion, was the result of a deliberate,

principled reasoning process, and based on substantial evidence. *Elliott v. Sara Lee Corp.*, 190 F.3d 601, 605 (4th Cir. 1999). If the administrator's determination meets this criteria, it must be upheld even if the court disagrees and would "come to a different conclusion independently." *Doe v. Group Hospitalization & Med. Servs.*, 3 F.3d 80, 85 (4th Cir. 1993), *abrogated on other grounds by Carden v. Aetna Life Ins. Co.*, 559 F.3d 256 (4th Cir. 2009).

Under the abuse of discretion standard, courts examine the reasonableness of a decision by considering various, non-exclusive factors, such as: (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decision-making process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; (8) and the fiduciary's motives and any conflict of interest it may have. *Booth v. Wal-Mart Stores, Inc. Associates Health & Welfare Plan*, 201 F.3d 335, 342-43 (4th Cir. 2000).

As to the final element of the reasonableness test announced in *Booth*, a conflict of interest exists where, as here, Defendant Hedrick is responsible for a portion of the Plan's costs (together with employee contributions). The existence of a conflict of interest does not, however, alter the standard of review. Rather, a conflict of interest is merely considered "as but one among many factors in determining the reasonableness of the Plan's discretionary determination." *Champion v. Black & Decker (U.S.), Inc.*, 550 F.3d 353, 359 (4th Cir. 2008);

9

*Conkright v. Frommert*, 130 S. Ct. 1640, 1646 (2010) (noting that under *Metropolitan Life Insurance Co. v. Glenn*, 554 U.S. 105 (2008), "when the terms of a plan grant discretionary authority to the plan administrator, a deferential standard of review remains appropriate even in the face of a conflict").

Finally, consideration of the *Booth* factors is not mandatory, particularly if the relevant language of a plan is unambiguous. *See Gardner v. Group Health Plan*, No. 5:09-cv-152-BO, 2011 WL 1321403, at *5 (E.D.N.C. Apr. 4, 2011) (noting that the *Booth* factors "are usually only helpful when a plan administrator exercises its discretion to interpret broad or ambiguous plan language"). If the language of the plan is clear, then the court need only consider the plan's language to determine whether the administrator abused its discretion in denying the claim.

The court begins with the language of the Plan. Exclusion #50 states:

No benefits shall be payable under the plan for any charges resulting from:

50. Charges resulting from illness or injury covered by the Worker's Compensation Act or similar law; and charges resulting from an accidental injury or illness arising out of or in the course of employment for wages or profit (past or present).

Here, both parties contend that the language of Exclusion #50 unambiguously supports each of their respective positions. The court does not agree and finds that the language of Exclusion #50 is ambiguous. Exclusion #50 states that no benefits are payable for "[c]harges resulting from illness or injury covered by the Worker's Compensation Act or similar law; and charges resulting from an accidental injury or illness arising out of or in

10

the course of employment for wages or profit (past or present)." Plaintiff argues that, for the exclusion to apply, a person must be covered by worker's compensation *and* the person must have been injured during the course of his employment for wages or profit. Defendant Hedrick, on the other hand, interprets the policy language to mean that if a person's work-related injury or illness is covered by worker's compensation insurance there is no coverage *or*, if a person's work-related injury or illness is *not* covered by worker's compensation insurance, then there is no coverage.² If defendant had wanted to clearly state what defendant contends the exclusion says, defendant could have simply stated: "There is no coverage for any work-related illness or injury." The clarity of the exclusion so stated is so simple that one cannot think of a legitimate reason not to say it this way. The way it is currently worded can, at best, be attributed to extremely poor draftsmanship. Indeed, defendant Hedrick indicated at oral argument that it intended to rewrite the exclusion to eliminate any ambiguity. *See* Transcript of Oral Argument, *Millage v. Hedrick*, June 22, 2011 (No. 3:10cv140); *see also* AJS Decl., Ex. 21, p. 68 (deposition of PPC's president Paul Tate, stating "I know going forward we're going to have to make some adjustments so we can avoid the semantic problem there"). To allow companies to use confusing and ambiguous language when obtaining the premiums and then interpret it their own way to

---

² Defendant contends that the semi-colon between the clauses suggests that the clauses operate independently of each other. As plaintiff points out, however, the word "and" immediately following the sem-colon suggests just the opposite. Indeed, the dictionary meaning of "and" means "in addition; also; as well as; used to join elements of similar syntactic structure *[*apples *and* pears; a red *and* white dress; he begged *and* borrowed*]*." WEBSTER'S NEW COLLEGE DICTIONARY 52 (2009).

avoid claims leads to mischief.

Defendant correctly contends that it is standard in the industry for health insurance policies to exclude work-related injuries, even if the claimant is not otherwise covered by worker's compensation or a similar law. However, exclusions must be stated so that those who buy the policy know what is excluded. The court is to consider how a reasonable layperson would interpret the language, not how a person in the industry, or an attorney, would interpret it. *See Senkier v. Hartford Life & Accident Ins. Co.*, 948 F.2d 1050, 1052-53 (7th Cir. 1991). Here, the court finds that the language of Exclusion #50 is ambiguous. The court will, therefore, address each *Booth* factor in determining whether Defendant Hedrick abused its discretion in denying Plaintiff's claim for benefits.

1. **The Language of the Plan**

The court has already determined that the language at issue in the Plan is ambiguous. Thus, the first *Booth* factor does not weigh heavily in favor of either party.

2. **The Purposes and Goals of the Plan**

The Plan itself states that its purpose is to "provide health care benefits in event of injury or sickness to covered employees and dependents." (AJS Decl., Ex. 1, p. 2.) Simply considering the goals of the Plan does not appear to favor either party.

3. **The Adequacy of the Materials**

Next, the court finds that Defendant Hedrick had before it all the materials it needed to determine Plaintiff's claim. It is undisputed in this case that Plaintiff is not covered by worker's compensation, and it is further undisputed that Plaintiff was injured during his

employment for wages of profit.  Thus, the only issue is whether Exclusion #50 excludes coverage.  In sum, this factor does not weigh heavily in favor of either party.

**4. Whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan**

Next, the court finds that Hedrick's interpretation of the Plan is inconsistent with several other provisions of the Plan.  For instance, several other exclusions in the Plan that have multiple subparts contain the word "or" when those subparts are intended to be used independently.  For example, Exclusion #14 specifically excludes from coverage:

14. Treatment of injuries that result from participation in the following dangerous leisure activities:

    a) pilot or co-pilot of an ultralight;
    b) organized racing including, but not limited to, competition in an automobile, motorcycle, balloon, hydroplane, powerboat, *or* ATV;
    c) participation in soaring, parachuting, skydiving, *or* bungee diving;
    d) intercollegiate athletic programs; *or*
    e) professional sports of any type.

Hedrick's use of the word "or" between the list of "dangerous leisure activities" in Exclusion #14 clearly means that the insured could be participating in any one of these activities to trigger the exclusion.  By contrast, the two clauses in Exclusion #50 are linked by the word "and," which suggests that both circumstances (being covered under worker's compensation *and* working during the course of employment for wages or profit) are necessary to trigger the exclusion.

Moreover, Hedrick's proposed construction of Exclusion #50 is inconsistent with the previous version of the Plan, which clearly provided for two separate exclusions.  Before

PPC became the plan supervisor, Hedrick employed Jefferson Pilot. The Jefferson Pilot plan stated, in relevant part:

> Benefits will not be paid for expenses:
>
> 1. Due to a sickness for which the patient can receive benefits under a worker's compensation act or similar law;
> 2. Due to an injury that arises out of or in the course of a job or employment for pay or profit;

AJS Decl., Ex. 19. Hedrick, therefore, understood the distinctions between the two versions of the policy and chose to draft Exclusion #50 in its current form. In other words, Hedrick clearly knew how to draft the language of Exclusion #50 so that it would be unambiguous, and it failed to do so in drafting the current language of Exclusion #50. As the court has already discussed, Defendant Hedrick has indicated that it intends to rewrite Exclusion #50 to eliminate any ambiguity. (*See* AJS Decl., Ex. 21, p. 68.)

The parties contest whether Hedrick has always interpreted Exclusion #50 as it does now. Hedrick maintains that it has always applied Exclusion #50 as barring work-related injuries regardless of whether the claimant was otherwise covered by worker's compensation or a similar law. Plaintiff points out, however, that PPC's President Paul Tate admitted that the computer system at PPC only has a form for the denial of coverage based on worker's compensation, not a separate form indicating that a person is excluded from coverage because they were injured during their course of employment for wages or profit. (AJS Decl., Ex. 21, pp. 60-61.) Plaintiff notes that, in initially denying Plaintiff's claim, PPC's claims representatives did not have any codes that would match Plaintiff's situation.

14

Defendant responds by stating that PPC did not have such a code simply because denial of coverage based on the work-related exclusion was rare. In sum, this factor does not weigh heavily in favor of either party.

    **5.    Whether the decision-making process was reasoned and principled**

Plaintiff contends that Defendant Hedrick's decision-making process was neither reasoned nor principled. Again, Plaintiff relies on the conduct of PPC in asserting this argument. For instance, Plaintiff contends that PPC's President Paul Tate only decided to deny Plaintiff's claim after he found out how much Plaintiff's follow-up surgery was going to cost. (AJS Decl., Ex. 21, pp. 23-24.) In the end, notwithstanding the confusion about the claims and appeals process, Hedrick, not PPC, ultimately denied Plaintiff's claim. The court has doubt over whether Hedrick's decision was reasoned and principled, particularly given that denying Plaintiff's claim clearly benefits Hedrick financially since Hedrick partially funds the Plan. Thus, this factor weighs slightly in favor of Plaintiff.

    **6.    Whether the decision was consistent with the procedural and substantive requirements of ERISA**

Although Defendant Hedrick made the ultimate decision on appeal, Hedrick did not respond to Plaintiff's appeal for approximately 90 days, and only after Plaintiff filed its amended complaint in this matter. Although it appears that PPC is partially at fault, it is ultimately Hedrick's responsibility to ensure that it complies with the procedural and substantive requirements of ERISA. Nonetheless, any failure to comply with the procedural requirements of ERISA did not prejudice Plaintiff–that is, PPC initially denied the claim, and

15

Hedrick ultimately denied it on appeal. Furthermore, the Plan documents are clear about the claim and appeals process. When PPC purported to deny Plaintiff's claim on appeal, Plaintiff could have directed the mistake to PPC's or Hedrick's attention at that time before initiating this lawsuit. In any event, this factor does not weigh heavily in favor of either party.

### 7. Any external standard relevant to the exercise of discretion

Plaintiff contends that this case is governed by the doctrine of *contra proferentem*, which requires a court to construe ambiguous contract language against the drafter. It is true that the Fourth Circuit has generally applied this doctrine to insurance contracts. In 2009, however, the Fourth Circuit explicitly stated that the Supreme Court's recent decision in *Metropolitan Life Insurance Co. v. Glenn*, 554 U.S. 105 (2008), foreclosed the application of *contra proferentem* where a plan gives an administrator discretion in interpreting an insurance plan. *See Carden*, 559 F.3d at 260. Thus, when an ERISA claim denial is based on abuse of discretion, the court is not required to construe the ambiguous language against the drafter. *Id*. Nevertheless, "whenever a plan administrator employs its interpretive discretion to construe an ambiguous provision in favor of its financial interest, that fact may be considered as a factor weighing against the reasonableness of its decision." *Id*. at 261. Here, Defendant Hedrick has clearly construed the language of Exclusion #50 in favor of its own financial interest. This factor weighs against the reasonableness of Defendant Hedrick's decision and in favor of finding coverage for Plaintiff.

### 8. The fiduciary's motives and any conflict of interest it may have

Defendant Hedrick has admitted that it has a conflict of interest because it makes claims determinations and also pays the claims. Moreover, Hedrick has not even attempted to contend that it has taken appropriate steps "to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances." *Glenn*, 554 U.S. at 117. Thus, this factor weighs in favor of a finding that Hedrick's decision denying Plaintiff's claim was unreasonable.

## IV. Conclusion

For the reasons stated herein, the court finds that Exclusion #50 is ambiguous, and the blame falls squarely on Defendant Hedrick for drafting it as such. Exclusion #50, as it is currently written, does not clearly put an insured layperson on notice that he is not covered if he is injured during the course of his employment for wages or profit, regardless of whether he is covered by worker's compensation or another similar law. In other words, an insured layperson could reasonably interpret Exclusion #50 as being intended merely to bar double recovery in the event that a person who is injured while working is already covered by worker's compensation or a similar law. As the court has already discussed, Defendant Hedrick used language in a previous plan that unambiguously stated that a person was excluded from coverage if he *either* was covered by worker's compensation or a similar law, *or* if he was injured during the course of his employment for wages or profit. Whether out of pure sloppiness or an intentional tactic to mislead, Defendant Hedrick drafted the current Exclusion #50 in a manner that could reasonably be construed to provide coverage to a person who is (1) self-employed *and* (2) not otherwise covered by worker's compensation

or a similar law.

Furthermore, application of the *Booth* factors results in a finding that Defendant Hedrick did abuse its discretion in denying coverage to Plaintiff, particularly since Hedrick has a clear conflict of interest in making claims determinations, and where Hedrick has not shown that it has taken any steps to reduce potential bias by walling off claims administrators from those persons interested in the administrator's finances.

For these reasons, the court will enter summary judgment in favor of Plaintiff as to the claim for wrongful denial of benefits. The court will grant summary judgment to Defendant PPC, however, as to Plaintiff's claim for breach of fiduciary duty. Plaintiff bases his breach of fiduciary claim against PPC on his contention that PPC went beyond its ministerial role of plan sponsor by denying both the initial claim and the appeal. The Plan clearly states, however, that PPC is not a fiduciary. Furthermore, the court has already found that Defendant Hedrick made the ultimate decision as to benefits. Furthermore, any breach of fiduciary claim will be dismissed, as there is no right to bring a claim for breach of fiduciary duty under 29 U.S.C. § 1132(a)(3) where the plaintiff has an adequate recovery for wrongful denial of benefits under 29 U.S.C. § 1132(a)(1)(B). *Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996). Thus, the breach of fiduciary duty claim in Count II will be dismissed.

**ORDER**

For the reasons stated herein, Plaintiff's motion for summary judgment (doc. 37) is granted as to Plaintiff's claim wrongful denial of benefits and denied as to Plaintiff's claim for breach of fiduciary duty. Defendants' motion for summary judgment (doc. 23) is denied

as to Plaintiff's claim for wrongful denial of benefits and granted as to Plaintiff's claim for breach of fiduciary duty.

Finally, Plaintiff has moved for statutory attorney's fees. Any motion for attorney's fees should be filed pursuant to FED. R. CIV. 54(d).

**IT IS SO ORDERED.**

Signed: September 30, 2011

Max O. Cogburn Jr.
United States District Judge